**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

CARLOS CEPEDA,

                Plaintiff,             No. 9:13-CV-1473
                                                    (GLS/CFH)

    v.

MIKHAIL GUSMAN,

                Defendant.

---

**APPEARANCES:**                         **OF COUNSEL:**

Carlos Cepeda
10-A-0910
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, New York 12051
Plaintiff pro se

Hon. Eric T. Schneiderman              RYAN W. HICKEY, ESQ.
Attorney General for the                 Assistant Attorney General
   State of New York
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Carlos Cepeda ("plaintiff"), an inmate who was, at all relevant times,

in the custody of the New York Department of Corrections and Community Supervision

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

("DOCCS") brings this action pursuant to 42 U.S.C. § 1983, alleging that Dr. Mikhail Gusman – who at all relevant times, was employed[2] at Eastern Correctional Facility ("Eastern") – violated his constitutional rights under the Eighth Amendment.  Dkt. No. 9 ("Am. Compl.").  Presently pending before the Court is defendant's Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56.  Dkt. No. 45.  Plaintiff opposed defendant's motion.  Dkt. No. 50.  For the following reasons, it is recommended that defendant's motion be granted.

## I. Background

### A. Plaintiff's Recitation of the Facts

The facts are related herein in the light most favorable to plaintiff as the nonmoving party.  See subsection II.A. infra.  Plaintiff contends that he suffers from a medical condition which creates a "build up of air and acid reflux" in his stomach that causes pain when he defecates.  Am. Compl. ¶ 14.  Dr. Gusman "claim[s] that nothing is wrong with [plaintiff].  Id. ¶ 9.  During plaintiff's visits to Eastern's hospital, Dr. Gusman "ignores everything [he] say[s]," and when plaintiff "attempt[s] to explain to [Dr. Gusman] what [he's] experiencing[,]" Dr. Gusman "tells [him] if he feel[s] any more pain, use the sick call process."  Id. ¶ 11.  Every time plaintiff uses the "sick call process," he receives the "same results" — that "Dr. Gusman ignored [him] and tells [him] the same thing."  Id.

---

[2] Dr. Gusman is Eastern's Facility Health Services Director and he served in this capacity at all times relevant to the complaint.  Dkt. No. 45-2 ¶ 6.

2

**B. Defendant's Recitation of the Facts**

In support of this motion, defendant filed a Statement of Material Facts.[3] While incarcerated at Eastern, plaintiff complained of "acid reflux, stomach constipation, and difficulty urinating, for which he received regular medical attention . . . through the facility 'sick call.'" Dkt. No. 45-2 ¶ 11. Throughout the approximately two years plaintiff was incarcerated at Eastern, he visited Dr. Gusman at least forty times. Id. ¶ 13. He saw other medical providers on fifty to seventy-five occasions to assess and treat these conditions. Id. ¶ 14. Dr. Gusman approved plaintiff's referrals to visit outside medical specialists and receive testing. Id. ¶ 15. On April 12, 2013, plaintiff had a "CT Cystogram" of his pelvis after complaining of urinary problems. Id. ¶ 16. The results were "normal." Id. That same day, plaintiff underwent a CT scan of his abdomen after complaining of abdominal pain. Id. ¶ 17. The CT scan also showed "normal" results. Id. On April 16, 2013, plaintiff

---

[3] Local Rule 7.1(a)(3) states:

> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.
>
> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

underwent a CT scan of his chest, abdomen, and pelvis. Id. ¶ 18. These tests revealed a "4mm right lower lobe pulmonary node, hepatic and renal cysts, gastrointestinal reflux, and sigmoid diverticulosis w/o diverticulitis." Id. (internal citations and quotation marks omitted). The non-party outside medical provider who reviewed the scans recommended that plaintiff have a follow-up scan in one year. Id. On April 24, 2014, plaintiff had a follow-up scan. Id.

On August 13, 2013, a non-party unidentified medical provider evaluated plaintiff during "sick call," after plaintiff complained of abdominal pain. Dkt. No. 45-2 ¶ 19. The medical provider noted that plaintiff's lungs were clear and his abdomen was soft, and prescribed plaintiff Motrin, magnesium citrate, and milk of magnesia. Id. On October 11, 2013, plaintiff underwent an endoscopy ("EGD") test to assess his gastrointestinal symptoms. Id. ¶ 20. The results were "normal." Id. Plaintiff's gastroenterologist non-party Dr. Ahman B. Choundry, the Chief of the Division of Gastroenterology at Albany Medical Center, evaluated plaintiff on May 30, 2013, December 19, 2013, and March 11, 2014. Id. ¶¶ 21, 22. Dr. Choundry recommended a "gastric emptying study" to further evaluate plaintiff's complaints. Id. ¶ 23. Dr. Gusman approved the test, which plaintiff undewent on January 24, 2014. Id. The results were "normal." Id. On March 11, 2014, plaintiff attended a consultation with Dr. Choundry, who evaluated plaintiff's medical history, as well as the results of his EGD, gastric emptying study, and CT scans. Dkt. No. 45-2 ¶ 24. Dr. Choundry concluded that plaintiff had "no severe dysmotility" of his bowel, but experienced acid reflux and irritable bowel syndrome related to scar tissue in his abdomen from previous surgeries. Id. Dr. Choundry observed a "small hiatal hernia," but noted that this

4

was not the cause of his symptoms and did not require surgery. Id. He recommended that plaintiff increase the dosage of his previously prescribed "proton pump inhibitor" medication, along with Miralax, a laxative. Id. ¶ 25. Dr. Choundry "specifically noted in her consultation report that plaintiff is not a good candidate for surgery." Id. ¶ 26.

On August 21, 2013, plaintiff informed the Eastern medical staff that he felt dizzy and that he fell in a stairway in the facility. Dkt. No. 45-2 ¶ 28. Eastern medical staff evaluated plaintiff, and sent him by ambulance to the hospital for further testing. Id. At the hospital, plaintiff received a CT scan of his head and a urinalysis test. Id. Plaintiff's urinalysis test was normal, and the CT scan revealed sinusitis. Id. ¶¶ 29, 30. That same day, plaintiff returned to Eastern, and the medical staff prescribed him the antibiotic Augmentin and a nasal spray to treat his sinus symptoms and complaints of bladder inflammation. Id. ¶ 31. Throughout his incarceration at Eastern, plaintiff received prescriptions for several medications to address his medical complaints, including those prescribed by Dr. Choundry. Id. ¶ 32. Plaintiff's medications were regularly re-filled and re-evaluated in accordance with his medical needs. Id. ¶ 33.

## II. Discussion[4]

Plaintiff contends that Dr. Gusman was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. See generally Am. Compl. Defendant argues that plaintiff cannot establish an Eighth Amendment deliberate medical indifference claim.

---

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

5

See Dkt. No. 45-1 ("Def. Mem. of Law") at 7. In the alternative, defendant argues that he is shielded by qualified immunity. See id. at 12-13. He also argues that the claim, insofar as it was brought against him in his official capacity, is barred by the Eleventh Amendment. See id. at 13-14.

### A. Legal Standards

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A non-moving party must

6

support such assertions by evidence showing the existence of a genuine issue of material fact. Id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### B. Eighth Amendment

The Eighth Amendment forbids the infliction of "cruel and unusual punishments" on those convicted of crimes, "which includes punishments that involve the unnecessary and wanton infliction of pain." U.S. CONST. amend. VIII; Hathaway v. Coughlin, 37 F.3d 63, 66

7

(2d Cir. 1994) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The deliberate indifference standard consists of both an objective and subjective component. Hathaway, 37 F.3d at 66. The objective component requires the plaintiff to demonstrate that his alleged medical need is "sufficiently serious." Id. The subjective component requires a showing that the defendant has acted with a "sufficiently culpable state of mind." Id.

### 1. Objective Component

For an inmate to state a cognizable claim of deliberate indifference, he must make a showing of serious illness or injury. See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). Deprivation of medical treatment is "sufficiently serious" if the injury or illness is one where there is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, 37 F.3d at 66 (internal citation omitted). "Determining whether a deprivation is an objectively serious deprivation entails two inquiries." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006)). First, the Court must determine "whether the prisoner was actually deprived of adequate medical care." Kucharczyk v. Westchester Cnty., 95 F. Supp. 3d 529, 537 (S.D.N.Y. 2015) (citation and internal quotation marks omitted). "Prison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment

8

when the care provided is reasonable." Jones v. Westchester Cnty. Dep't of Corrs., 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008). However, a prison official may be held liable "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). Second, the Court must determine "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or likely will cause the prisoner." Id.

> [I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious. Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain. In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone. Thus, although we sometimes speak of a "serious medical condition" as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

Salahuddin, 467 F.3d at 280 (internal citation and quotation marks omitted).

The undersigned will first assess whether plaintiff was actually deprived of adequate medical care. See Kucharczyk, 95 F. Supp. 3d at 537. Plaintiff contends that "Dr. Gusman has ignored his duties in seeing that [plaintiff] [has] a right to be cured and spared of

9

unnecessary pain and suffering, that he has authority to end by ordering a medical procedure that would put an end to years of pain and suffering and deteriorating condition." Am. Compl. ¶ 17.

The undersigned determines that plaintiff failed to provide evidence from which a fact-finder could reasonably conclude that Dr. Gusman's alleged failures constitute a sufficiently serious deprivation of medical care. See Salahuddin, 467 F.3d at 279. There is no indication in the record that Dr. Gusman provided plaintiff with inadequate treatment; in fact, the record establishes the opposite. Dr. Gusman declared that during the approximately two years plaintiff was incarcerated at Eastern, he "regularly approved referrals for plaintiff to see several different outside medical specialists, or to receive testing at outside facilities when needed." Dkt. No. 45-7 ("Gusman Decl.") at 3. Dr. Gusman further declared that plaintiff "received regular and consistent medical attention through the sick call procedures available to inmates at the facility." Id. Such statements are consistent with plaintiff's medical records, and his "Referral History," which establish that plaintiff's complaints of abdominal pain, dizziness, and problems urinating were met with CT scans, referrals to outside providers, and medication, as necessary. Dkt. No. 46 ("Pl. Med. Records") at 11 (detailing plaintiff's past medical history of treatment at Eastern); Dkt. No. 46-1 ("Pl. Referral History"). Moreover, plaintiff testified that he saw Dr. Gusman for treatment "about 40 times," and visited the facility hospital "about 50 to 75 times." Dkt. No. 45-4 ("Pl. Dep.") at 22, 24. Thus, it is clear that Dr. Gusman provided plaintiff with consistent and reasonable care throughout his incarceration at Eastern.

Plaintiff's "fixat[ion] on his epigastric abdominal pains," and his belief that the only

10

way to remedy that pain is through surgery, and Dr. Gusman's apparent failure to approve such surgery, does not amount to inadequate medical care. See Pl. Med. Records at 11. Plaintiff's concerns constitute nothing more than disagreement with Dr. Gusman's treatment plan, which is not actionable under the Eighth Amendment. See Randle v. Alexander, 960 F. Supp. 2d 457, 481 (S.D.N.Y. 2013) (quoting Alston v. Bendheim, 672 F. Supp. 2d 378, 385 (S.D.N.Y. 2009) ("Indeed, '[a]n inmate's disagreement with his treatment or a difference of opinion over the type or course of treatment [does] not support a claim of cruel and unusual punishment.'"). Accordingly, plaintiff has failed to establish that he suffered a sufficiently serious deprivation of medical care under the objective prong of the deliberate indifference analysis.

### 2. Subjective Component

A prison official acts with a sufficiently culpable state of mind when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Deliberate indifference is a mental state equivalent to subjective recklessness" which "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id. (quotation marks omitted). A defendant "may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was 'insubstantial or non-existent.'" Wright v. Genovese, 684 F. Supp. 2d 137, 154 (N.D.N.Y. 2010) (citing Farmer, 511 U.S. at 844)). Therefore, "the defendant's belief that

11

his conduct posed no risk of serious harm need not be sound so long as it is sincere, and even if objectively unreasonable, a defendant's mental state may be nonculpable." Id. at 154-155 (quoting Salahuddin, 467 F.3d at 281) (internal quotation marks omitted).

Further, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment claim." Chance, 143 F.3d at 703. Therefore, any "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of intervention, are not adequate grounds for a Section 1983 claim." Randle, 960 F. Supp. 2d at 481.

Plaintiff fails to establish that Dr. Gusman knew of and disregarded an "excessive risk" to his health by not scheduling him for surgery or some other unspecified treatment. Farmer, 511 U.S. at 837. The record demonstrates that Dr. Gusman addressed plaintiff's complaints through medication and referrals to outside medical providers, and implemented the specialist's recommendations into his treatment plan. See Gusman Decl. at 5 ("The gastroenterologist recommended that [in response to his abdominal pain] plaintiff continue on his previously prescribed 'proton pump inhibitor (PPI) medication at an increased dose of 40 mg, along with 'Miralax' laxative."). Dr. Choundry's consultation reports demonstrate that, on three separate occasions, the doctor determined that plaintiff was "not a good candidate" for surgery and that his hiatal "hernia [was] not causing pain." Pl. Med. Records at 195-97. Based on his own assessment of plaintiff's medical records, including CT scans and other test results, as well as the consultation reports of outside

12

medical professionals, Dr. Gusman determined that "plaintiff's desire to receive surgery" was inconsistent with his treatment plan and medical needs. Gusman Decl. at 6 ("As demonstrated throughout his medical records, plaintiff's desire to receive surgery is contrary to the considered professional judgment of his medical providers, including his medical provers at outside hospitals.").

Insofar as plaintiff asks that the Court to take "judicial notice" that a non-party doctor's "referral and diagnosis for (surgery) . . . has raised issues of material fact [and that] [d]efendant's motion for summary judgment should be denied," the Court interprets plaintiff's request as a further argument in opposition to defendant's motion.[5] Dkt. No. 50 at 6. In support of that allegation, plaintiff proffers a one-page consultation report from a non-party doctor dated June 25, 2015 which recommends plaintiff for an evaluation for "possible repair of hiatal hernia (or theracic surgery)." Dkt. No. 50-1 at 2. The fact that a medical professional believed that plaintiff should be *evaluated* for surgery does not mean that Dr. Gusman's differing view is incorrect or that he was deliberately indifferent to plaintiff's serious medical needs. See Randle, 960 F. Supp. 2d at 481 ("[A] difference of opinion over the type or course of treatment [does] not support a claim of cruel and

---

[5] Pursuant to Federal Rule of Evidence ("Fed. R. Ev.") 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EV. 201(b). Plaintiff requests the Court to hold "not subject to reasonable dispute" — his statement that Dr. Gusman "ignored his fiduciary duties" and "violated and breached his Hippocratic Oath" by not "seeing that plaintiff had a right to be cured and spared of unnecessary pain and suffering." Dkt. No. 50 at 6. These claims are in dispute in this case. Further, plaintiff has not offered evidence to suggest that such claims "can be accurately or readily determined." Therefore, the undersigned declines to take judicial notice of plaintiff's statement.

13

unusual punishment.") (internal citations and quotation marks omitted).[6] Inmates do not have the constitutional right to the treatment of their choice. See Wright, 694 F. Supp. 2d at 155. That plaintiff may have "preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation." Id. (citing Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986)).

Further, even if Dr. Gusman's decision against surgery caused plaintiff unintended harm, negligence is not actionable under section 1983. See Burroughs v. Petrone, 138 F. Supp. 3d 182, 211 (N.D.N.Y. 2015) ("Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm.") (internal quotation marks and citation omitted); see Daniels v. Williams, 474 U.S. 327 (1986) (concluding that negligence is not a cognizable claim under section 1983); Kucharczyk, 95 F. Supp. 3d at 537 ("[M]ere negligence is not enough to state a claim for deliberate indifference."). That Dr. Gusman may have been negligent[7] in "diagnosing or treating" plaintiff's medical condition does not amount to deliberate indifference. Adams v. Rock, No. 9:12-CV-1400 (GLS/ATB), 2015 WL 1312738, at *7 (N.D.N.Y. Mar. 24, 2015) (citing Farmer, 511 U.S. at 835) ("Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference.").

To the extent that plaintiff testified that Dr. Gusman denied him certain medications and that such denial amounts to deliberate indiffernce, Pl. Dep. at 45-4 at 13, 31, plaintiff's

---

[6] Moreover, the undersigned notes that a recommendation for an evaluation is not equivalent to a conclusion that plaintiff needs surgery. However, even a recommendation for surgery would not require a different conclusion.

[7] The undersigned makes no assessment as to whether plaintiff can state a claim as to negligence, a state-law claim not properly before this Court.

14

conclusory allegations do not create a material issue of fact precluding summary judgment because his allegations are contradicted by the record. See Brown v. White, No. 9:08-CV-200 (GLS/ATB), 2010 WL 985184, at *8 (N.D.N.Y. Mar. 15, 2010) ("[P]laintiff's conclusory suggestion that [the defendant] completely refused to provide any medical attention . . . is insufficient to create a dispute of fact in the face of the sworn affidavit and supporting documentary evidence in the record."); Benitez v. Pecenco, No. 92 Civ. 7670 (DC), 1995 WL 444352, at *3 n.5 (S.D.N.Y. July 27, 1995) (finding that the plaintiff's conclusory allegation that he was denied medication was contradicted by his medical records and did not create a material dispute of fact). Plaintiff's vague allegations that Dr. Gusman discontinued certain medications do not establish that Dr. Gusman deviated from plaintiff's treatment plan or that he "acted with a culpable state of mind in making this decision," especially where, as here, the record demonstrates that plaintiff received various medications in response to his complaints. See Rush v. Fischer, 923 F. Supp. 2d 545, 555 (S.D.N.Y. 2013) ("Here, the plaintiff has provided no factual allegations that the decision to provide ibuprofen in lieu of Percocet deviated from reasonable medical practice for the treatment of his pain, much less that Nurse Gutouski acted with a culpable state of mind in making this decision."); Hill, 657 F.3d at 123; see, e.g., Gusman Decl. at 5 ("[Plaintiff] received several prescription medications to address his medical conditions, including omeprazole at the 40 m.g. dosage and Miralax as suggested by the gastroenterologist. Plaintiff's prescription medications were re-filled as necessary.") (citing Pl. Med. Records at 11, 15). Further, "[i]ssues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking." Hill

15

v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011) (citation omitted).

Thus, plaintiff has failed to raise a material question of fact whether Dr. Gusman knew of and disregarded an excessive risk to his health or safety as to his alleged failure to recommend plaintiff for surgery or some other unspecified treatment. See Farmer, 511 U.S. 837. Accordingly, plaintiff has failed to demonstrate that Dr. Gusman was deliberately indifferent to a serious medical condition, and it is recommended that defendant's motion on this ground be granted.

### C. Qualified Immunity

Defendant argues that he is "entitled to qualified immunity because . . . the record evidence establishes that he did not violate plaintiff's constitutional rights." Def. Mem. of Law at 12. Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted). A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a

16

constitutional violation. See Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. See Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test. See subsection II.B. supra. Moreover, it was objectively reasonable for Dr. Gusman to believe that based on his own assessment of plaintiff's medical condition, as well as the assessment of outside medical providers, plaintiff did not need surgery to treat his medical condition. See subsection II.B.2. supra. By relying on his own assessment of plaintiff's condition, which is supported by plaintiff's medical records and the consultation reports of outside medical professionals, it cannot be said that Dr. Gusman objectively knew he was violating plaintiff's constitutional rights. See id. Because the undersigned concludes that there is no constitutional violation, the undersigned need not reach whether the constitutional rights were clearly established at the time of the alleged violation. See Aiken, 236 F. Supp. 2d at 230. Accordingly, in the alternative to dismissal for deliberate indifference to serious medical needs, it is recommended that defendant's motion on this ground be granted.

### D. Eleventh Amendment

Plaintiff brings this suit against Dr. Gusman in his "official and in his [p]ersonal capacity." Am. Compl. ¶ 8. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity,

17

commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

Moreover, suit against a state official in his or her official capacity is a suit against the entity that employs the official. Faird v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer in his official capacity. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Because plaintiff seeks monetary damages against Dr. Gusman for acts occurring within the scope of his duties, the Eleventh Amendment bar applies. Thus, to the extent that plaintiff asserts claims against Dr. Gusman in his official capacity, in the alternative, it is recommended that defendant's motion be granted, as such claims are barred by the

18

Eleventh Amendment.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendant's Motion for Summary Judgment (Dkt. No. 45) be **GRANTED**, and plaintiff's amended complaint (Dkt. No. 9) be **DISMISSED in its entirety with prejudice**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[8]

Dated: February 6, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[8] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

19